FILED 26 AUG '26 14:36 USDC-ORE

PRESTON BERMAN
2600 Center St. NE
Salem, OR 97301-2669
Telephone: (503) 947-3764
Preston@CitizensForMentalHealthReform.com
They/Them

Plaintiff, appearing Pro Se

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **PRESTON BERMAN**,<br><br>Petitioner,<br><br>v.<br><br>**ALISON BORT,** *in her official capacity as Executive Director of the Oregon Psychiatric Security Review Board*; **JAMES DIEGEL** *in his official capacity as the Interim Superintendent for Oregon State Hospita*l,<br><br>Respondents. | Case No: 6:26-cv-01779-JE<br><br>**PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241** |

## I. JURISDICTION AND CUSTODY

1. This is a Petition for a Writ of Habeas Corpus brought under 28 U.S.C. § 2241 challenging the legality of Petitioner's current custody.
2. Petitioner Preston Berman is confined at the Oregon State Hospital, 2600 Center St. NE, Salem, OR 97301, pursuant to the Psychiatric Security Review Board's ("PSRB") Final Order entered April 4, 2025 (PSRB No. 10-2505), following a hearing held February 26, 2025.
3. Petitioner is in custody pursuant to actions and orders connected to the Oregon Psychiatric Security Review Board, including PSRB No. 10-2505 and the underlying 2010 Deschutes County proceedings in which Petitioner was found guilty except for insanity of first-degree arson, second-degree burglary, and reckless burning(s) and placed under PSRB jurisdiction for a maximum of 20 years.
4. The PSRB's April 4, 2025 Order found Petitioner remains under its jurisdiction, denied discharge, approved "conditional release" pending availability of an opening at Cascadia Behavioral Health, and committed Petitioner to a state hospital designated by the Oregon Health Authority for care, custody, and treatment until such community placement became available.
5. Respondent is Alison Bort, sued in her official capacity as Executive Director of the Oregon Psychiatric Security Review Board. Petitioner is presently in the physical custody of the Oregon State Hospital under PSRB authority.
6. This Court has jurisdiction because Petitioner is presently in custody within the District of Oregon and seeks relief from confinement that they contend is in violation of the

Constitution, laws, or treaties of the United States, specifically the Due Process Clause of the Fourteenth Amendment.

7. Petitioner has exhausted available state remedies. A Petition for Judicial Review of the April 4, 2025 Order was timely filed in the Oregon Court of Appeals (Case No. A187609). On June 24, 2026, the Court of Appeals issued a dispositional decision affirming the PSRB Order without opinion.

## II. DECISION OR ACTION BEING CHALLENGED

8. Petitioner challenges the Psychiatric Security Review Board's Final Order entered April 4, 2025 (PSRB No. 10-2505), issued after the hearing held February 26, 2025.
9. In that Order the PSRB found that Petitioner continues to be affected by a qualifying mental disorder (bipolar disorder) which, when active, renders Petitioner a substantial danger to others; denied discharge from PSRB jurisdiction; approved conditional release pending availability of an opening at Cascadia Behavioral Health; and committed Petitioner to a state hospital designated by the Oregon Health Authority for care, custody, and treatment until such community placement becomes available.
10. The Order continued Petitioner under the full jurisdiction of the PSRB and kept Petitioner in hospital custody despite the Board's simultaneous finding that Petitioner is a proper subject for conditional release.
11. Petitioner seeks federal habeas relief under 28 U.S.C. § 2241 because the continued custody and retention of jurisdiction under the April 4, 2025 Order violate the Due Process Clause of the Fourteenth Amendment.

## III. STATEMENT OF FACTS

12. In December 2010, in Deschutes County (10FE0206SF), Petitioner was found guilty except for insanity of first-degree arson, second-degree burglary, and reckless burnings. The trial court found that, because of a qualifying mental disorder, Petitioner lacked substantial capacity to conform conduct to the requirements of law, placed Petitioner under the jurisdiction of the Psychiatric Security Review Board for a maximum of 20 years, and committed Petitioner to the state hospital.
13. Petitioner's qualifying mental disorder is bipolar disorder (Type I). The parties stipulated to the existence of a qualifying mental disorder at the February 26, 2025 hearing.
14. Petitioner was conditionally released in December 2015 and lived in the community. In 2019, after a medication change, Petitioner experienced increased symptoms, was hospitalized, became manic, paranoid, and disorganized, and engaged in aggressive outbursts including vandalizing a room, repeatedly punching a wall, and destroying a computer. The Board revoked conditional release and recommitted Petitioner.
15. After another period of conditional release, in 2021 (during the COVID-19 pandemic, when diverting commercial flights was relatively frequent) Petitioner experienced a manic episode during a commercial flight that involved smoking cigarettes and resulted in an emergency landing in Colorado. Conditional release was again revoked and Petitioner was returned to the Oregon State Hospital on November 1, 2021.
16. Since approximately June 2022, Petitioner remained psychiatrically stable for an extended period. Residual mood symptoms were primarily dysphoria or depression. In the fall of 2023 Petitioner made a non lethal (it would have never worked) suicide attempt by

asphyxiation in a bathroom; that act was related to depression, was planful rather than purely impulsive, and posed no risk of harm to others.

17. Dr. James Peykanu has been Petitioner's treating psychiatrist at the Oregon State Hospital since late 2021 (and first treated Petitioner briefly in 2010). At the February 26, 2025 hearing Dr. Peykanu testified that:

18. Petitioner had been doing very well for several years, with the last period of significant manic symptoms around June 2022;

19. Petitioner had made substantial gains in insight, self-monitoring, and proactive symptom management;

20. Petitioner reliably communicated early warning signs to the treatment team, requested medication adjustments when appropriate, and accepted temporary increases in observation when needed;

21. Petitioner was fully medication-compliant, had all on- and off-grounds privileges, and had been found ready for conditional-release planning by risk review;

22. Petitioner does not present with the common comorbidities (personality disorder or substance-use disorder) that elevate risk of violence toward others, and does not display interpersonal aggression or violent attitudes;

23. Past dangerous behavior occurred in the context of untreated or poorly controlled mania, but the question of future dangerousness was less clear because of Petitioner's improved ability to head off symptoms;

24. Petitioner was clinically ready for a less-restrictive setting, the treatment team supported the proposed Cascadia conditional-release plan, and Dr. Peykanu had no concerns about that plan;

25. Petitioner's insight and commitment to medication are internal and not dependent on ongoing PSRB jurisdiction; Petitioner would continue medications without Board supervision.

26. The State did not object to the proposed conditional-release plan. The Board admitted 422 exhibits and heard Dr. Peykanu's testimony. On April 4, 2025 the Board entered its Final Order finding that Petitioner remains affected by a qualifying mental disorder that, when active, renders Petitioner a substantial danger to others; denying discharge; approving conditional release pending an opening at Cascadia Behavioral Health; and committing Petitioner to the state hospital until such placement becomes available.

27. Petitioner timely sought judicial review of the April 4, 2025 Order in the Oregon Court of Appeals (Case No. A187609). On June 24, 2026 the Court of Appeals affirmed the Order without opinion.

28. After the April 4, 2025 Order, in June 2025 Petitioner experienced a manic episode that involved property destruction. The records will show that the episode caused no damage to any person and involved no threat of harm to any person.

29. In 2026 Petitioner experienced another manic episode. The records will show that every time staff directed Petitioner to do something, Petitioner agreed immediately, that there was no property destruction, and that there was no danger to others, even though the mental illness was active.

30. Under the PSRB's definition, "substantial danger" includes a risk that the person will inflict injury or harm on others and may be based on verbal conduct that places a reasonable person in fear of sustaining injury or harm. Petitioner remains confined at the Oregon State Hospital under the April 4, 2025 Order. Petitioner contends that the Board's finding of

substantial danger is not supported by substantial evidence of current or reasonably probable future dangerousness caused by the qualifying mental disorder—even when active—in light of the sustained periods of stability, the absence of any harm or threat to persons during the post-2022 episodes, the insight and immediate compliance demonstrated when symptoms have been active, and the clinical testimony in the record.

## IV. EXHAUSTION AND PRIOR CHALLENGES

31. Petitioner has fully exhausted available state remedies with respect to the April 4, 2025 PSRB Order that is the subject of this petition.

32. Petitioner timely filed a Petition for Judicial Review of the April 4, 2025 Order in the Oregon Court of Appeals, Case No. A187609. The Court of Appeals issued a dispositional decision affirming the Order without opinion on June 24, 2026.

33. Petitioner has not intentionally bypassed available state procedures. The claims raised in this federal petition—that the continued custody and retention of jurisdiction under the April 4, 2025 Order violate the Due Process Clause of the Fourteenth Amendment because there is no substantial evidence that Petitioner's qualifying mental disorder currently, or with reasonable medical probability when active, renders Petitioner a substantial danger to others—were presented to the Oregon Court of Appeals.

34. Petitioner previously filed a federal habeas petition, Berman v. Matteucci, Case No. 6:23-cv-00660 (District of Oregon), challenging the original 2010 guilty-except-for-insanity adjudication. That petition did not challenge any subsequent PSRB order.

35. Petitioner also previously challenged aspects of ongoing PSRB jurisdiction in a related federal civil-rights action under 42 U.S.C. § 1983, Case No. 6:24-cv-01127-MTK (District

of Oregon, Eugene Division). That action sought prospective injunctive relief and does not bar the present habeas petition challenging the legality of the specific custody resulting from the April 4, 2025 Order after exhaustion of state judicial review.

36. Petitioner seeks prompt federal review because the challenged custody is continuing and Petitioner contends it violates the United States Constitution.

## V. GROUNDS FOR RELIEF

37. Petitioner is being held in violation of the Constitution, laws, or treaties of the United States for the reasons stated below. Petitioner states the facts supporting each ground and will submit any legal arguments in a separate memorandum.

### GROUND I: Fourteenth Amendment – Substantive Due Process (No substantial evidence that Petitioner's qualifying mental disorder, even when active, renders Petitioner a substantial danger to others)

38. Petitioner is confined at the Oregon State Hospital under the PSRB's April 4, 2025 Order despite the absence of substantial evidence that Petitioner's qualifying mental disorder (bipolar disorder), even when active, currently renders or with reasonable medical probability will render Petitioner a substantial danger to others.

39. The Board found that Petitioner remains affected by a qualifying mental disorder that, "when active," renders Petitioner a substantial danger to others. That finding is not supported by substantial evidence in the record.

40. At the February 26, 2025 hearing, treating psychiatrist Dr. James Peykanu testified that Petitioner had remained largely stable since approximately June 2022, had developed significant insight and proactive self-monitoring, reliably communicated early warning signs, and did not present with comorbidities (such as personality disorder or substance-use

disorder) that elevate risk of violence toward others. Dr. Peykanu further testified that the question of future dangerousness was less clear precisely because of Petitioner's improved ability to head off symptoms, and that Petitioner was clinically ready for a less-restrictive setting.

41. The historical incidents relied upon by the Board (including the 2019 and 2021 episodes) did not result in actual harm to any person. The 2021 commercial-flight episode, which occurred during the COVID-19 pandemic when diverting flights was relatively frequent, involved smoking cigarettes and did not involve harm or threat of harm to others.

42. After the April 4, 2025 Order, Petitioner experienced a manic episode in June 2025 that involved property destruction but caused no damage to any person and involved no threat of harm to any person. In 2026 Petitioner experienced another manic episode during which, according to the records, Petitioner immediately agreed to every staff direction, there was no property destruction, and there was no danger to others—even though the mental illness was active.

43. Under these facts, a reasonable person could not find that Petitioner's qualifying mental disorder, even when active, presents a substantial danger to others. Continued confinement on that basis violates the substantive component of the Due Process Clause of the Fourteenth Amendment.

**GROUND II: Fourteenth Amendment – Substantive Due Process (Continued confinement based on historical patterns and speculative predictions of future risk rather than current, individualized evidence)**

44. The PSRB's decision to continue Petitioner's confinement and retain jurisdiction rests primarily on historical patterns of behavior and speculative predictions that the qualifying mental disorder may become active in the future and then render Petitioner dangerous, rather than on current, individualized evidence that Petitioner presently presents a substantial danger to others as a result of the disorder.

45. The Board's April 4, 2025 Order and the State's arguments emphasize Petitioner's earlier cycle of conditional release followed by manic episodes and revocation (particularly the 2019 and 2021 episodes). Those historical events form the principal foundation for the finding of substantial danger.

46. The Board's own phrasing—that the disorder, "when active," renders Petitioner a substantial danger—expressly premises the danger finding on a hypothetical future reactivation rather than on any present manifestation of dangerousness.

47. At the February 26, 2025 hearing and in the clinical record, there was no evidence of recent aggression, threats, or other conduct placing others at risk of injury or harm. Dr. Peykanu testified to sustained stability, insight, and self-management since mid-2022, and the post-Order episodes in June 2025 and 2026, while involving active symptoms, produced no danger to any person.

48. A mere recitation of past acts, without a showing that those acts form a reliable foundation for predicting present or reasonably probable future dangerousness caused by the mental disorder, cannot constitutionally support continued confinement. Continued custody under

these circumstances functions as preventive detention based on speculation and history rather than current, disorder-linked danger, in violation of the substantive component of the Due Process Clause of the Fourteenth Amendment.

**GROUND III: Fourteenth Amendment – Procedural Due Process (Unconstitutionally low bar for "substantial danger," including verbal conduct that merely places a reasonable person in fear)**

49. The PSRB's definition and application of "substantial danger" sets an unconstitutionally low bar for the continued deprivation of liberty.

50. Under OAR 859-010-0005(8), "substantial danger" is defined as a risk that the person will inflict injury or harm on others. Evidence of that danger "may include information about historical patterns of behavior, recent behavior, or verbal or physical threats, which have caused injury or harm or would place a reasonable person in fear of sustaining injury or harm."

51. As applied by the Board, this standard permits continued hospital confinement based on historical conduct or on verbal behavior that merely places a reasonable person in fear, without requiring proof of actual or imminent physical harm or a current, concrete risk of such harm caused by the qualifying mental disorder.

52. In Petitioner's case the Board relied on this low threshold to retain jurisdiction and continue confinement even though the record—including the June 2025 and 2026 manic episodes—contains no evidence that Petitioner caused injury or harm to any person or engaged in conduct that placed any person in reasonable fear of physical injury while the illness was active.

53. The Due Process Clause requires that the procedures used to continue the significant deprivation of liberty inherent in PSRB hospital commitment provide adequate protection against erroneous or arbitrary deprivation. A definition of "substantial danger" that can be satisfied by attenuated historical patterns or by verbal conduct that merely induces fear fails to supply that protection and, as applied here, violates the procedural component of the Due Process Clause of the Fourteenth Amendment.

**GROUND IV: Fourteenth Amendment – Substantive Due Process (Post-Order episodes in 2025 and 2026 demonstrate that even when the mental illness is active there is no danger to others)**

54. After the April 4, 2025 Order that is the subject of this petition, Petitioner experienced two manic episodes while still under the Board's jurisdiction and in hospital custody. Those episodes demonstrate that even when Petitioner's qualifying mental disorder is active, it does not render Petitioner a substantial danger to others.

55. In June 2025 Petitioner experienced a manic episode that involved property destruction. The records will show that the episode caused no damage to any person and involved no threat of harm to any person.

56. In 2026 Petitioner experienced another manic episode. The records will show that every time staff directed Petitioner to do something, Petitioner agreed immediately, that there was no property destruction, and that there was no danger to others—even though the mental illness was active.

57. These post-Order episodes occurred under the precise conditions the Board's April 4, 2025 Order predicted would produce substantial danger ("when active"). Instead, the episodes

produced neither harm nor threat of harm to any person and, in the 2026 episode, demonstrated immediate compliance with staff directions.

58. The post-Order record therefore supplies concrete, individualized evidence that the Board's predictive finding of substantial danger is not supported by substantial evidence. Continued confinement on the basis of that finding violates the substantive component of the Due Process Clause of the Fourteenth Amendment.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Petitioner Preston Berman respectfully requests that this Court grant the following relief:

a. Issue a writ of habeas corpus under 28 U.S.C. § 2241 and grant appropriate relief from the unlawful custody resulting from the Psychiatric Security Review Board's April 4, 2025 Order (PSRB No. 10-2505).

b. Declare that Petitioner's continued confinement and the retention of PSRB jurisdiction under the April 4, 2025 Order violate the Due Process Clause of the Fourteenth Amendment because there is no substantial evidence that Petitioner's qualifying mental disorder, even when active, renders Petitioner a substantial danger to others.

c. Order Respondent and the State of Oregon to release Petitioner from the unlawful confinement, or, in the alternative, to provide a prompt constitutionally adequate hearing conducted by an independent third-party decision-maker that meaningfully evaluates whether Petitioner presently presents a substantial danger to others as a result of a qualifying mental disorder, applying a standard consistent with the Due Process Clause.

d. Grant such other and further relief as the Court deems just and proper.

DATED: August 20, 2026

Respectfully submitted,

s/ *Preston Berman*

PRESTON BERMAN
2600 Center St. NE
Salem, OR 97301-2669
Preston@CitizensForMentalHealthReform.com
Telephone: (503) 947-3764
They/Them

Plaintiff, appearing Pro Se